FILED

2008 OCT 29 PM 4:28

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

October 2007 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SALVADOR REYES VERA,<br>  a.k.a. "Albert Vera<br>   Reyes,"<br>  a.k.a. "Magic,"<br>  a.k.a. "Sas,"<br>ARMANDO REYES VERA,<br>  a.k.a. "Mando,"<br>JAVIER FERNANDO CAMACHO,<br>  a.k.a. "Camacho Fernando<br>      Santiago,"<br>  a.k.a. "Primo,"<br>JOSE ARTURO GOICOCHEA-<br>CHAVEZ,<br>  a.k.a. "Shorty,"<br>ROBERTO HIGAREDA-LOPEZ,<br>  a.k.a. "Chiquis,"<br>RUBEN GUERRERO OREJEL,<br>  a.k.a. "Crow,"<br>GLORIA CALDERON,<br>MANUEL DUARTE AGUILERA,<br>JESUS SANTIAGO HIGAREDA,<br>  a.k.a. "Yogi,"<br>JULIO AHUMADA, | SA CR ~~SA CR~~ **SA CR 08 - 00280**<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; 21 U.S.C. § 861(a)(1): Use of a Minor in Drug Operations; 21 U.S.C. § 843(b): Use of a Communication Facility; 18 U.S.C. § 922(g)(8): Person Subject to a Restraining Order In Possession of a Firearm] |

ELMER DUARTE,
    a.k.a. "MeMe,"
    a.k.a. "Bugsy,"
EDGAR MANUEL MONDRAGON,
    a.k.a. "Little Clown,"
LETICIA ISABEL SANCHEZ, and
FILIPP CHEBOTAREV,

                    Defendants.

_____

The Grand Jury charges:

                    COUNT ONE

                [21 U.S.C. § 846]

I.    OBJECTS OF THE CONSPIRACY

    1.    Beginning on or about a date unknown to the Grand Jury, but at least since April 2007, and continuing to on or about October 16, 2008, in Orange County, within the Central District of California, and elsewhere, defendants SALVADOR REYES VERA, also known as ("a.k.a.") "Albert Vera Reyes," a.k.a. "Magic," a.k.a. "Sas," ("VERA"), ARMANDO REYES VERA, a.k.a. "Mando," ("A. VERA"), JAVIER FERNANDO CAMACHO, a.k.a. "Camacho Fernando Santiago," a.k.a. "Primo," ("CAMACHO"), JOSE ARTURO GOICOCHEA-CHAVEZ, a.k.a. "Shorty," ("GOICOCHEA-CHAVEZ"), ROBERTO HIGAREDA-LOPEZ, a.k.a. "Chiquis," ("HIGAREDA-LOPEZ"), RUBEN GUERRERO OREJEL, a.k.a. "Crow," ("OREJEL"), GLORIA CALDERON, MANUEL DUARTE AGUILERA, JESUS SANTIAGO HIGAREDA, a.k.a. "Yogi," ("HIGAREDA"), JULIO AHUMADA, ELMER DUARTE, a.k.a. "MeMe," a.k.a. "Bugsy," ("DUARTE"), EDGAR MANUEL MONDRAGON, a.k.a. "Little Clown," ("MONDRAGON"), LETICIA ISABEL SANCHEZ, FILIPP CHEBOTAREV, and others known and unknown, aiding and abetting each other, did conspire and agree with each other to knowingly and intentionally distribute and possess with intent to distribute more than 100

grams of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, more than 500 grams of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, more than 50 grams of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, and more than 50 grams of methamphetamine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1).

II.  MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

2.    The objects of the conspiracy were to be accomplished in substance as follows:

a.    Defendant VERA, by virtue of his high-ranking position with the Minnie Street Lopers street gang, oversaw the narcotics trafficking activities in the Bishop Manor area, a condominium complex in Santa Ana, California.  Defendant VERA, along with his brother defendant A. VERA, worked with and coordinated with other narcotics dealers in the Bishop Manor area to facilitate the distribution of narcotics within the Bishop Manor area.

b.    Defendants VERA and A. VERA distributed cocaine, cocaine base and heroin.

c.    Defendants CAMACHO and CALDERON supplied defendants VERA and A. VERA with cocaine base.  Defendant OREJEL supplied defendants VERA and A. VERA with heroin.  Defendant AGUILERA supplied defendants VERA and A. VERA with cocaine base and cocaine.

///

3

d.    Defendant OREJEL also distributed narcotics in and around the Bishop Manor area.

e.    Defendants AHUMADA and DUARTE assisted defendants VERA and A. VERA in their narcotics distribution activities.

f.    Defendants VERA and A. VERA supplied cocaine base to defendant CALDERON.

g.    Defendants VERA and A. VERA referred narcotics purchasers interested in obtaining methamphetamine to defendant GOICOCHEA-CHAVEZ and defendant GOICOCHEA-CHAVEZ distributed methamphetamine in and around the Bishop Manor area.

h.    In addition to supplying heroin, defendant OREJEL also supplied methamphetamine to narcotics purchasers in and around the Bishop Manor area.

i.    Defendant MONDRAGON assisted defendant OREJEL in his narcotics distribution activities and supplied defendant A. VERA with heroin.

j.    Defendant HIGAREDA-LOPEZ was a narcotics distributor in the Bishop Manor area and distributed methamphetamine, cocaine base and heroin.

k.    Defendant HIGAREDA facilitated the distribution of methamphetamine in and around the Bishop Manor area.

l.    Defendant SANCHEZ brokered cocaine base sales in and around the Bishop Manor area.

m.    Defendant CHEBOTAREV purchased heroin from Defendant A. VERA for further distribution.

n.    Defendants VERA and A. VERA also contacted and warned each other and the other narcotics distributors in the Bishop Manor area of the presence of law enforcement in the

4

Bishop Manor area in order to avoid law enforcement detection of their narcotics trafficking activities.

III. OVERT ACTS

3.    In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendants VERA, A. VERA, CAMACHO, GOICOCHEA-CHAVEZ, HIGAREDA-LOPEZ, OREJEL, CALDERON, AGUILERA, HIGAREDA, AHUMADA, DUARTE, MONDRAGON, SANCHEZ and CHEBOTAREV, and others known and unknown, committed various overt acts within the Central District of California and elsewhere, including but not limited to, the following:

A.    DEFENDANT A. VERA SOLD HEROIN

4.    On or about February 27, 2008, defendant A. VERA had a recorded telephone conversation with a confidential informant ("CI #1") in which defendant A. VERA agreed to sell CI #1 an ounce of heroin.

5.    On or about February 27, 2008, defendant A. VERA met with CI #1 and sold CI #1 an ounce of heroin (approximately 26 grams).

B.    DEFENDANTS CAMACHO AND SANCHEZ SOLD COCAINE BASE

6.    On or about March 20, 2008, defendant SANCHEZ had a recorded telephone conversation with a confidential informant ("CI #2") in which defendant SANCHEZ agreed to sell CI #2 seven grams of cocaine base.

7.    On or about March 20, 2008, defendant SANCHEZ met with CI #2 and sold CI #2 approximately 7 grams of cocaine base.

8.    On or about April 10, 2008, defendant SANCHEZ had a recorded telephone conversation with CI #2 in which defendant

SANCHEZ agreed to sell CI #2 an ounce of cocaine base and agreed to introduce CI #2 to defendant SANCHEZ's supplier for a price of $160.00.

9.    On or about April 10, 2008, defendant SANCHEZ met with CI #2 and CI #2 gave defendant SANCHEZ $160.00 in order to be introduced to the cocaine base supplier.

10.    On or about April 10, 2008, CI #2 met with defendant SANCHEZ's cocaine base supplier, defendant CAMACHO, and defendant CAMACHO sold CI #2 one ounce of cocaine base (approximately 26.3 grams).

11.    On or about April 22, 2008, defendant SANCHEZ had a recorded telephone conversation with CI #2 in which defendant SANCHEZ agreed to sell CI #2 four ounces of cocaine base for $2,800.00 and agreed to provide CI #2 with the supplier's (defendant CAMACHO) telephone number for $200.00.

12.    On or about April 22, 2008, defendant SANCHEZ met with CI #2 and defendant SANCHEZ gave CI #2 defendant CAMACHO's telephone number in exchange for $200.00.

13.    On or about April 22, 2008, CI #2 had a recorded telephone conversation with defendant CAMACHO in which defendant CAMACHO stated that he could only obtain one ounce of cocaine base that night, but that he would obtain more the following day.

14.    On or about April 22, 2008, defendant CAMACHO met with CI #2 and sold CI #2 one ounce of cocaine base (approximately 25.6 grams).

15.    On or about April 23, 2008, CI #2 had a recorded telephone conversation with defendant CAMACHO in which defendant CAMACHO agreed to sell CI #2 the remaining three ounces of

6

cocaine base.

16. On or about April 23, 2008, CI #2 had a recorded telephone conversation with defendant CAMACHO in which defendant CAMACHO stated he could only sell two ounces of cocaine base.

17. On or about April 23, 2008, defendant CAMACHO met with CI #2 and sold CI #2 two ounces of cocaine base (approximately 51.1 grams).

C.    DEFENDANTS HIGAREDA AND OREJEL SOLD METHAMPHETAMINE

18. On or about April 29, 2008, defendant HIGAREDA had a recorded telephone conversation with CI #2 in which defendant HIGAREDA agreed to sell CI #2 two ounces of methamphetamine for $850.00 each.

19. On or about April 29, 2008, defendant HIGAREDA met with CI #2 and they drove to defendant OREJEL's house where defendant OREJEL sold CI #2 two ounces of methamphetamine (approximately 18.2 grams of methamphetamine) for $1,700.00.

D.    DEFENDANTS VERA AND A. VERA OBTAINED COCAINE BASE FROM
      DEFENDANT CAMACHO

20. On or about May 13, 2008, defendant VERA had a recorded telephone conversation with defendant A. VERA in which defendant VERA stated he was going to obtain cocaine base from defendant CAMACHO.

21. On or about May 13, 2008, defendant VERA had another recorded telephone conversation with defendant A. VERA in which defendant A. VERA told defendant VERA that he had customers that needed cocaine base and defendant VERA told defendant A. VERA to give a customer the sample and if the customer liked the sample, defendant CAMACHO would prepare the cocaine base.

E.   DEFENDANT VERA DIRECTED DEFENDANT GOICOCHEA-CHAVEZ TO A METHAMPHETAMINE SUPPLIER

22.   On or about May 18, 2008, defendant VERA had a recorded telephone conversation with defendant GOICOCHEA-CHAVEZ in which defendant VERA told defendant GOICOCHEA-CHAVEZ to contact a certain individual to obtain two ounces of methamphetamine.

F.   DEFENDANT HIGAREDA-LOPEZ SOLD COCAINE BASE

23.   On or about May 22, 2008, defendant HIGAREDA-LOPEZ had a recorded telephone conversation with CI #2 in which defendant HIGAREDA-LOPEZ agreed to sell CI #2 one ounce of cocaine base.

24.   On or about May 22, 2008, CI #2 met with defendant HIGAREDA-LOPEZ and defendant HIGAREDA-LOPEZ sold CI #2 one ounce of cocaine base (approximately 24.8 grams).

G.   DEFENDANT AHUMADA DELIVERED NARCOTICS AT DEFENDANT VERA'S DIRECTION

25.   On or about May 29, 2008, defendant VERA had a recorded telephone conversation with defendant AHUMADA in which defendant VERA directed defendant AHUMADA to deliver narcotics to a narcotics purchaser.

26.   On or about May 29, 2008, defendant AHUMADA delivered narcotics to a narcotics purchaser in Irvine, California.

27.   On or about May 30, 2008, defendant VERA had a recorded telephone conversation with defendant AHUMADA in which defendant VERA directed defendant AHUMADA to deliver narcotics to a narcotics purchaser.

28.   On or about May 30, 2008, defendant AHUMADA delivered narcotics to a narcotics purchaser in Irvine, California.

//

H.    DEFENDANTS HIGAREDA-LOPEZ AND GOICHOCHEA-CHAVEZ SOLD
      METHAMPHETAMINE

29.    On or about May 30, 2008, defendant HIGAREDA-LOPEZ had a recorded telephone conversation with CI #2 in which defendant HIGAREDA-LOPEZ instructed CI #2 to drive to defendant HIGAREDA-LOPEZ's residence in order to meet with defendant HIGAREDA-LOPEZ's methamphetamine supplier.

30.    On or about May 30, 2008, CI #2 met with defendant HIGAREDA-LOPEZ and defendant GOICOCHEA-CHAVEZ and defendant GOICOCHEA-CHAVEZ sold CI #2 12.8 grams of methamphetamine for $800.00.

31.    On or about June 11, 2008, defendant GOICOCHEA-CHAVEZ had a recorded telephone conversation with CI #2 in which defendant GOICOCHEA-CHAVEZ agreed to sell CI #2 one ounce of methamphetamine for $1,600.00.

32.    On or about June 11, 2008, defendant GOICOCHEA-CHAVEZ met with CI #2 and sold CI #2 one ounce of methamphetamine (approximately 26 grams).

33.    On or about July 2, 2008, defendant GOICOCHEA-CHAVEZ had a recorded telephone conversation with CI #2 in which defendant GOICOCHEA-CHAVEZ agreed to sell CI #2 one ounce of methamphetamine for $1,600.00.

34.    On or about July 2, 2008, defendant GOICOCHEA-CHAVEZ met with CI #2 and sold CI #2 one ounce of methamphetamine (approximately 22.2 grams).

I.    DEFENDANTS A. VERA AND DUARTE DISTRIBUTED COCAINE AND
      COCAINE BASE

35.    On or about July 10, 2008, defendant A. VERA had a

recorded telephone conversation with defendant DUARTE in which defendant DUARTE asked for cocaine and defendant A. VERA agreed to bring it to him.

36.   On or about July 11, 2008, defendant A. VERA had a recorded telephone conversation with defendant DUARTE in which defendant DUARTE informed defendant A. VERA that he had a customer that needed cocaine and defendant A. VERA agreed to deliver it to him.

37.   On or about July 15, 2008, defendant A. VERA had a recorded telephone conversation with defendant DUARTE in which defendant DUARTE asked defendant A. VERA for cocaine base in order for him to distribute it.

J.   DEFENDANT CHEBOTAREV OBTAINED HEROIN FROM DEFENDANT A. VERA

38.   On or about July 12, 2008, defendant CHEBOTAREV had a recorded telephone conversation with defendant A. VERA in which defendant A. VERA agreed to sell defendant CHEBOTAREV two ounces of heroin for $550.00.

39.   On or about July 15, 2008, defendant CHEBOTAREV had a recorded telephone conversation with defendant A. VERA in which defendant A. VERA agreed to sell defendant CHEBOTAREV two ounces of heroin for approximately $625.00.

K.   DEFENDANT A. VERA ORDERS COCAINE BASE FROM DEFENDANT AGUILERA

40.   On or about July 16, 2008, defendant A. VERA had a recorded telephone conversation with defendant AGUILERA in which defendant A. VERA ordered cocaine base from defendant AGUILERA.

///

///

10

L.    DEFENDANT A. VERA ORDERED COCAINE BASE FROM DEFENDANT CAMACHO

41.    On or about July 16, 2008, defendant A. VERA had a recorded telephone conversation with defendant CAMACHO in which defendant A. VERA ordered one ounce of cocaine base from defendant CAMACHO.

M.    DEFENDANT HIGAREDA ATTEMPTED TO ORDER NARCOTICS FROM DEFENDANT A. VERA

42.    On or about July 16, 2008, defendant HIGAREDA had a recorded telephone conversation with an associate of defendant A. VERA in which defendant HIGAREDA inquired as to the price of a certain amount of narcotics and defendant A. VERA's associate informed defendant HIGAREDA that defendant A. VERA did not sell that certain amount of narcotics because defendant A. VERA did not make much profit.

N.    DEFENDANTS HIGAREDA-LOPEZ, MONDRAGON AND OREJEL SOLD HEROIN

43.    On August 7, 2008, CI #2 had a recorded telephone conversation with defendant HIGAREDA-LOPEZ in which defendant HIGAREDA-LOPEZ agreed to sell CI #2 two ounces of heroin for $560.00.

44.    On or about August 7, 2008, defendant HIGAREDA-LOPEZ met with defendant MONDRAGON and obtained the heroin.

45.    On or about August 7, 2008, defendant HIGAREDA-LOPEZ sold CI #2 two ounces of heroin (approximately 50.2 grams).

46.    On or about August 26, 2008, CI #1 had a recorded telephone conversation with defendant MONDRAGON in which defendant MONDRAGON agreed to sell CI #1 one ounce of heroin for $220.00 and an additional six grams of heroin for $100.00.

47. On or about August 26, 2008, defendant OREJEL sold CI #1 approximately 28.1 grams of heroin that had been negotiated by defendant MONDRAGON.

48. On or about August 29, 2008, CI #2 had a telephone conversation with defendant MONDRAGON in which defendant MONDRAGON agreed to sell CI #2 three ounces of heroin for $720.00.

49. On or about August 29, 2008, defendant MONDRAGON sold CI #2 three ounces of heroin (approximately 74.1 grams).

50. On or about September 23, 2008, CI #2 had a recorded telephone conversation with defendant MONDRAGON in which defendant MONDRAGON told CI #2 to go to defendant OREJEL's residence to purchase five ounces of heroin.

51. On or about September 23, 2008, CI #2 met with defendant OREJEL at his residence within Bishop Manor and defendant OREJEL sold CI #2 five ounces of heroin for $1,200.00.

O.  DEFENDANTS A. VERA and CAMACHO SOLD COCAINE BASE TO DEFENDANT CALDERON

52. On or about September 23, 2008, defendant A. VERA had a recorded telephone conversation with defendant CAMACHO in which defendant A. VERA ordered one ounce of cocaine base from defendant CAMACHO for $800.00.

53. On or about September 23, 2008, defendant A. VERA had a recorded telephone conversation with defendant CALDERON in which defendant CALDERON ordered one ounce of cocaine base from defendant A. VERA.

54. On or about September 23, 2008, defendant A. VERA had a recorded telephone conversation with defendant CALDERON in which

defendant A. VERA told defendant CALDERON that he had a supplier (defendant CAMACHO) who would sell the cocaine base to defendant CALDERON for $800.00.

P.   DEFENDANTS A. VERA AND DUARTE AGREED TO DISTRIBUTE HEROIN

55.   On or about September 27, 2008, defendant A. VERA had a recorded telephone conversation with defendant DUARTE in which defendant DUARTE asked for heroin to distribute.

Q.   DEFENDANT AGUILERA SUPPLIED DEFENDANT A. VERA WITH COCAINE BASE

56.   On or about October 8, 2008, defendant A. VERA had a recorded telephone conversation with defendant AGUILERA in which defendant A. VERA asked defendant AGUILERA about the price of one ounce of cocaine base and defendant AGUILERA stated it would be $950 for one ounce of cocaine base.

R.   DEFENDANTS MONDRAGON AND A. VERA DISCUSSED NARCOTICS TRANSACTIONS

57.   On or about October 1, 2008, defendant MONDRAGON had a recorded telephone conversation with defendant A. VERA in which defendant A. VERA asked defendant MONDRAGON if defendant A. VERA could pay defendant MONDRAGON for narcotics he had obtained from defendant OREJEL on a previous occasion.

58.   On or about October 13, 2008, defendant MONDRAGON had a recorded telephone conversation with defendant A. VERA in which defendant MONDRAGON told defendant A. VERA that he could come by to pick up the narcotics because they were ready.

S.   DEFENDANT CALDERON OBTAINED COCAINE BASE FOR DEFENDANT A. VERA

59.   On or about October 8, 2008, defendant A. VERA had a

13

recorded telephone conversation with defendant CALDERON in which defendant A. VERA asked defendant CALDERON for two ounces of cocaine base and defendant CALDERON stated that her supplier sold it for $840.00 per ounce.

60. On or about October 15, 2008, defendant A. VERA had a recorded telephone conversation with defendant CALDERON in which defendant CALDERON agreed to provide defendant A. VERA with one and a half ounces of cocaine base from the supplier they used the previous time.

COUNT TWO

[21 U.S.C. § 861(a)(1)]

On or about May 15, 2008, in Orange County, within the Central District of California, defendant SALVADOR REYES VERA, a.k.a. "Albert Vera Reyes," a.k.a. "Magic," a.k.a. "Sas," did knowingly and intentionally employ, hire, use, persuade, induce, entice, and coerce a person under eighteen years of age, namely R.V., to commit the crime of possession with intent to distribute a mixture or substance containing a detectable amount of cocaine base, a schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

15

COUNT THREE

[21 U.S.C. § 861(a)(1)]

On or about July 16, 2008, in Orange County, within the Central District of California, defendant ARMANDO REYES VERA, a.k.a. "Mando," did knowingly and intentionally employ, hire, use, persuade, induce, entice, and coerce a person under eighteen years of age, namely R.V., to commit the crime of possession with intent to distribute a mixture or substance containing a detectable amount of cocaine, a schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT FOUR

[21 U.S.C. § 843(b)]

On or about July 12, 2008, in Orange County, within the Central District of California, defendant FILIPP CHEBOTAREV knowingly and intentionally used a communication facility, to wit, a telephone, in committing, causing and facilitating the commission of an act constituting a narcotics felony, to wit, possession with intent to distribute heroin, a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT FIVE

[21 U.S.C. § 843(b)]

On or about July 15, 2008, in Orange County, within the Central District of California, defendant FILIPP CHEBOTAREV knowingly and intentionally used a communication facility, to wit, a telephone, in committing, causing and facilitating the commission of an act constituting a narcotics felony, to wit, possession with intent to distribute heroin, a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

18

COUNT SIX

[18 U.S.C. § 922(g)(8)]

On or about July 1, 2008, in Orange County, within the Central District of California, defendant ROBERTO HIGAREDA-LOPEZ, who was subject to a court order issued in the Superior Court of California, County of Orange, on September 15, 2006 in case number 06CM03337, and issued after a hearing of which defendant HIGAREDA-LOPEZ received actual notice, and at which defendant HIGAREDA-LOPEZ had an opportunity to participate, restraining him from harassing, stalking, or threatening an intimate partner, that by its terms explicitly prohibited the use, attempted use or threatened use of physical force against such intimate partner that would reasonably be expected to cause bodily injury, did knowingly possess in and affecting interstate and foreign commerce, a firearm, namely, a Star Bonifacio Starfire pistol, Model 30, 9mm, serial number 1834111, and ammunition, namely, 11 of rounds of Winchester 9mm ammunition.

A TRUE BILL

_____
Foreperson

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

LAWRENCE KOLE
Assistant United States Attorney
Acting Chief, Santa Ana Branch Office

TERRI K. FLYNN
Assistant United States Attorney

19